MONROE, J.
1. Defendant, being on trial for feloniously entering a dwelling house in the daytime with intent to steal, and with the larceny of $200, a state witness was asked, with regard to a certain letter:
“Will you please state the circumstances under which this letter marked ‘P-l,’ about which you have been testifying, was opened, and by whom it was opened?”
Whereupon defendant’s counsel objected, because it had been shown that the accused was not present when the letter was opened and the acts were between others; and, the objection having been overruled, a bill was reserved. It appears from the statement per curiam, made part of the bill, that the property'which the accused was charged with having stolen consisted of nine $20 gold certificates and $20 in bills or money of some other kind; that the letter in question was written by the accused to a person who enjoyed the reputation of being a voodoo doctor ; that it was opened with his consent, in his presence, and in the presence of the witness; that it contained a $20. gold certificate ; and that the state was relying mainly on circumstantial evidence for the conviction of the accused.
Under these circumstances, the question propounded was clearly admissible, since its evident purpose was to elicit the information that a letter, written by the accused and opened as mailed, contained property answering the description of that which the accused was charged with having stolen.
2. It appears from the next bill that the witness answered the question referred to in the bill already considered, and that action was thereupon taken as follows:
“ T came into the sheriff’s office,’ said the witness. ‘D. T. Reid, the sheriff, C. T. Perkins, deputy sheriff, and Charles A. or Charles F. Ten-ell [the so-called voodoo do. tor] were in there when I walked in. Mr. Reid picked up the letter off the desk or table. He said to the doctor; “Here is a letter, addressed to you, that you sent in and got out of the post office. You can object to its being opened by me. You have a perfect right to object; or,” he said, “you can let me open it.” He says: “I have no objection to your opening it. I don’t know anything about it.” Mr. Reid opened it. When he opened it and unfolded it, there was a $20 bill in it. He unfolded the $20 bill. Hie handed it to the doctor. He read it, and told him he did not know anything about it —what it nad reference to, or anything.’ At this juncture, by request of the district attorney, the court instructs the jury that they must disregard entirely any declaration made by Terrell in regard to his knowledge, or want of knowledge, as to the contents of the letter. * * s: At this juncture the counsel for the defendant moves the court to discharge the jury in this case, and his reason therefor he gives as follows: ‘When the district attorney first propounded the question to witness Ford to detail the circumstances of the opening of the letter, the defendant, through his counsel, made the objection that it was out of the presence of the accused, and the acts were between others. This objection was overruled, and the jury heard the entire statement of the opening of this letter, all of which showed, conclusively, that they were out of the presence of the accused, and it is too late by such instructions to the jury to repair the damage that has been done to the defendant,, and that therefore, for above reasons, ask for the discharge of the jury by the court.’ The motion is refused. To which ruling of the court, counsel for defendant excepts and tenders this in lieu of a bill.”
And a bill was subsequently prepared and signed in conformity with the facts as thus stated. In their brief, counsel for defendant say:
“We believe that no argument is required to convince the court that the ground upon which the district judge seeks to have his ruling, [that the question as put was unobjectionable in itself, and that he could not foresee nor *129 anticipate the answer of the witness] sustained is unsound, as it will be readily seen that his attention was directed to the fact that the witness was asked to testify concerning matters that occurred out of the presence of the accused. That was the real objection, and the only one.”
If the theory thus propounded were correct, it would be impossible to introduce as evidence an instrument written by a person accused of crime, unless it could also be shown that he was present when it came into the possession of the person producing it, or to prove the finding of stolen goods, unless it could be shown that the person charged with the stealing was present at the finding— propositions which are untenable and need not be discussed. The objection which was argued in this court orally (and, as we gather from the statement of the judge, in the trial court) was that, whereas, it was the theory of the state that the accused was negotiating for a voodoo charm which would protect him from punishment for the offense with which he was charged, the accused himself wished to have it appear that his correspondence with the doctor related merely to luck and love philters, and that the doctor’s disclaimer of any knowledge in the matter was disconcerting and prejudicial, and was inadmissible, because made out of his presence (the presence of the accused). There is no doubt that the doctor’s statement was inadmissible, the judge and the district attorney being the first to recognize the fact, and the jury were instructed to disregard it, which, as the answer of the witness was, to that extent, uncalled for and unexpected, was about all that could be done. Beyond that, however, the statement of the doctor was entirely negative in its character, and threw no light on the contents of the letter, one way or the other. It could not, therefore, as we think, have operated to the prejudice of the accused.
Judgment affirmed.